LOS ANGELES MEMORIAL COLISEUM COMMISSION, Plaintiff-Appellant,

v.

The CITY OF OAKLAND, a Charter City and Municipal Corporation, Defendant-Appellee.

No. 82–6003.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1983.

Decided Sept. 29, 1983.

Maxwell M. Blecher, Blecher & Collins, Los Angeles, Cal., for plaintiff-appellant.

William A. Wineberg, Jr., Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for defendant-appellee.

Before KENNEDY and HUG, Circuit Judges, and REDDEN,* District Judge.

HUG, Circuit Judge:

This antitrust action was brought to enjoin a state court eminent domain action. The district court dismissed on the ground that, on the facts of this case, it was without authority to issue such an injunction. We affirm.

I

Since 1960, Oakland had been the home city of the Raiders. The Raiders is a professional football team and a member of the National Football League ("NFL"). On March 1, 1980, the Raiders and the Los Angeles Memorial Coliseum ("Coliseum") entered into an agreement under which the

---

* The Honorable James A. Redden, United States District Judge for the District of Oregon, sitting by designation.

Raiders agreed to transfer its business from Oakland to Los Angeles and to play home games in the Coliseum. The NFL opposed and sought to prevent the Raiders' planned move to Los Angeles. The Raiders and the Coliseum filed an antitrust action in federal court challenging the NFL's right to prevent the Raiders from moving to Los Angeles. Following a jury trial, a verdict was entered in favor of the Raiders and the Coliseum, and the district court permanently enjoined the NFL from interfering with the transfer of the Raiders to Los Angeles.

The City of Oakland also opposed the planned transfer of the Raiders to Los Angeles. In February 1980, in an attempt to keep the Raiders in Oakland, Oakland brought an eminent domain action in state court to acquire the Raiders.

The state trial court in the eminent domain action initially entered a preliminary injunction prohibiting the Raiders from moving to Los Angeles. Then, following a change of venue, the state trial court granted summary judgment in favor of the Raiders. The state trial court ruled that a professional football franchise could not be acquired under California's eminent domain law.

The state trial court's decision was reversed by the California Supreme Court. *City of Oakland v. Oakland Raiders,* 32 Cal.3d 60, 183 Cal.Rptr. 673, 646 P.2d 835 (1982). The California Supreme Court held that the state's eminent domain law authorized the taking of *any* property, including a professional football team, if a public use could be shown. *Id.,* 646 P.2d at 838–40; *see* Cal.Gov't Code § 37350.5 (West Supp. 1983); Cal.Civ.Proc.Code § 1235.170 (West 1982). The California court went on to hold that acquisition of the Raiders could be for a valid public use, and that the acquisition could be effected by eminent domain if such a use were demonstrated. *City of Oakland,* 646 P.2d at 843. The California Supreme

Court remanded the eminent domain action for a trial on the "public use" issue. *Id.,* 646 P.2d at 844–45. That action has not yet been concluded.

This action was filed by the Coliseum in July 1982, shortly after the California Supreme Court issued its decision reinstating the eminent domain action. By this action, the Coliseum seeks to enjoin, under Section 16 of the Clayton Act, 15 U.S.C. § 26, the eminent domain action currently proceeding in state court on the ground that it violates Section 7 of the Clayton Act, 15 U.S.C. § 18.

The district court dismissed the case, ruling that it had no authority to enjoin the ongoing state court action. The district court subsequently denied the Coliseum's motion to vacate the dismissal and amend its complaint, and awarded Oakland $3,500 for attorneys' fees and costs incurred in opposing the motion. The Coliseum appeals the dismissal and the $3,500 sanction.

II

The Coliseum contends it is entitled to an injunction under Section 16 of the Clayton Act on the ground that the eminent domain action violates section 7 of that act.

The district court's ruling that it could not enjoin the state court action was based on *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). As in this case, the issue in *Vendo* was whether an ongoing state court action could be enjoined under Section 16 of the Clayton Act.

Under most circumstances, the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits federal courts from enjoining state court proceedings. One of only three statutory exceptions to this prohibition is where Congress has "expressly authorized" such relief. 28 U.S.C. § 2283.[1] *Vendo* concerned whether and to what extent Section 16 of the

---

1. The other two statutory exceptions allow a federal court to stay proceedings in a state court "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Judicial exceptions to the Anti-Injunction Act exist, *e.g., Munoz v. Coun-* *ty of Imperial,* 667 F.2d 811 (9th Cir.) (application of "stranger to the suit" doctrine), *cert. denied* —— U.S. ——, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982), but appellant has raised only the "expressly authorized" exception, and we limit our discussion accordingly.

Clayton Act is an "expressly authorized" exception to the Anti-Injunction Act.

There was no majority opinion in *Vendo.* The three-justice-plurality opinion, written by Justice Rehnquist, stated that section 16 was not an expressly authorized exception to the Anti-Injunction Act, and for that reason the district court in *Vendo* could not enjoin the state court proceeding. 433 U.S. at 640–41, 97 S.Ct. at 2892.

Justice Blackmun, in an opinion joined by Chief Justice Burger, concurred in the result. Justice Blackmun wrote that section 16 is an exception to the Anti-Injunction Act "under narrowly limited circumstances." 433 U.S. at 644, 97 S.Ct. at 2894. He would not permit an injunction unless the state court proceedings "are themselves part of a 'pattern of baseless, repetitive claims' that are being used as an anti-competitive device, all the traditional prerequisites for equitable relief are satisfied, and the only way to give the antitrust laws their intended scope is by staying the state proceedings." *Id.* (citation omitted). Because there was only a single state court action, and not a "pattern of baseless, repetitive claims," Justice Blackmun agreed that no injunction could issue. *Id.* at 645, 97 S.Ct. at 2894.

The dissent, written by Justice Stevens and joined by three other justices, states that section 16 is an expressly authorized exception to the Anti-Injunction Act, 433 U.S. at 658, 97 S.Ct. at 2901, and that under some circumstances even a single state court proceeding could be enjoined. *Id.* at 662, 97 S.Ct. at 2903.

While the Court's fragmentation in *Vendo* creates some doubt about the circumstances under which section 16 may be used to enjoin a state court proceeding, a majority of the Court strongly suggested that a single state court proceeding could not ordinarily be enjoined. *See* C. Wright, A. Miller & E. Cooper, *17 Federal Practice and Procedure* § 4224, at 331 (1978). The plurality opinion would never permit such an injunction under section 16, and Justice Blackmun's opinion would require "a pattern of baseless, repetitive claims." 433 U.S. at 644, 97 S.Ct. at 2894. In a footnote, Justice Blackmun stated:

> Since I believe that federal courts should be hesitant indeed to enjoin ongoing state-court proceedings, I am of the opinion that a pattern of baseless, repetitive claims or some equivalent showing of grave abuse of the state courts must exist before an injunction would be proper.

433 U.S. at 644 n. *, 97 S.Ct. at 2894 n. *. This conceivably leaves the door open for a situation where an "equivalent showing of grave abuse of the state courts" could take place in the context of a single lawsuit.

 In our case, the single state court eminent domain action does not constitute a "pattern of baseless, repetitive claims" or an "equivalent showing of grave abuse of the state courts." [2] We are more reluctant to find such "equivalents" where the plaintiff requests not merely damages, as he did in *Clipper Exxpress v. Rocky Mountain Motor Tariff,* 690 F.2d 1240 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983), but an injunction against a state court proceeding.[3] Requests for such an injunction bring into play considerations of comity and federalism. *See, e.g., Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 286, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234 (1976). The Supreme Court has cautioned that any doubt about whether a

---

**2.** This became even more readily apparent when the California Supreme Court reversed the trial court's summary judgment against the City and held that it is possible for Oakland to take the Raiders by eminent domain.

**3.** The Coliseum argues that Justice Blackmun's opinion in *Vendo* should be read as permitting an injunction in those cases which come under the "sham" exception to the *Noerr-Pennington* doctrine, and that in this circuit a single state court proceeding can be enjoined because we have determined that a single judicial proceeding may come within the "sham" exception. *See Clipper Exxpress v. Rocky Mountain Motor Tariff,* 690 F.2d 1240, 1257 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). We think the combination of opinions in *Vendo* compels a higher standard for enjoining state court proceedings than *Clipper Exxpress* requires for other antitrust remedies.

state court proceeding should be enjoined is to be resolved against issuing an injunction. *Id.* at 297, 90 S.Ct. at 1748; *see Alton Box Board Co. v. Esprit De Corp.,* 682 F.2d 1267, 1271 (9th Cir.1982). This extreme reluctance to act does not apply to other antitrust remedies.

Thus, we conclude that the district court correctly determined that it was without authority to enjoin the ongoing state court eminent domain action.

## III

The Coliseum argues that even if the district court were without authority to enjoin the state court proceeding, dismissal was improper because Oakland or any other future owner of the Raiders could have been enjoined from moving the team back to Oakland. Such an injunction, however, would be no more than a transparent attempt to avoid the effect of *Vendo.* The prohibition against enjoining state court proceedings "cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." *Atlantic Coast Line,* 398 U.S. at 287, 90 S.Ct. at 1743.

The Coliseum further argues that dismissal was inappropriate because it should have been allowed to amend its complaint to allege a cause of action for damages. The district court has discretion to grant or deny leave to amend a complaint. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Although such leave should be "freely given," it is not an abuse of discretion to deny it where the amendment would be futile. *Id.* It appears that the proposed amendment would be futile because, with the eminent domain action not yet concluded, any claim for damages the Coliseum may have as a result of that action is not yet ripe. *See Gray v. Shell Oil Co.,* 469 F.2d 742, 748–49 (9th Cir.1972), *cert. denied,* 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973). Thus, it was not an abuse of discretion to deny the Coliseum leave to amend its complaint.

## IV

In its order denying the Coliseum's motion to vacate the judgment and for recon-

sideration, the district court awarded $3,500 to Oakland for costs and attorneys' fees as a sanction for violation of the court's local rules. *See* C.D.Cal.R. 3.19, 28. Such a sanction is reviewed only for abuse of discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). Moreover, the district court "has a large measure of discretion in interpreting and applying" its own local rules. *Lance, Inc. v. Dewco Services, Inc.,* 422 F.2d 778, 784 (9th Cir.1970).

The Coliseum violated Local Rule 3.16, as interpreted by the district court, by arguing in support of its motion for reconsideration that *Vendo* did not preclude enjoining the state court action. Local Rule 3.16 prohibits raising arguments on a motion for reconsideration that have previously been raised. The transcript of the hearing on Oakland's motion to dismiss reveals that the Coliseum argued there that *Vendo* did not apply. In addition, the district court's memorandum order dismissing the action made clear that it had considered the *Vendo* decision. Under these circumstances, the district court did not abuse its discretion by imposing the $3,500 sanction.

The judgment is AFFIRMED.