**VILLAGE OF BOLINGBROOK,**
Plaintiff–Appellant,

v.

**CITIZENS UTILITIES COMPANY OF
ILLINOIS, Defendant–Appellee.**

No. 88–1868.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1988.

Decided Dec. 14, 1988.

**482**

James H. Ryan, Keck Mahin & Cate, Chicago, Ill., for plaintiff-appellant.

Lee N. Abrams, Mayer Brown & Platt, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

A federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. In February 1988 Citizens Utilities Co. of Illinois filed a suit in state court, asking the court to enforce a consent decree it had entered in 1971 resolving litigation between Citizens and the Village of Bolingbrook. The Village responded with this suit, asking the federal judge to enjoin the state proceedings. An injunction is "expressly authorized by Act of Congress", according to the Village, because the consent decree is a contract in restraint of trade, its enforcement a violation of the Sherman Act, 15 U.S.C. §§ 1 and 2. The decree allocates between Citizens and the Village the responsibility (and the entitlement) to provide water and sewer service to buildings in and near the Village. The Village believes that the decree is a territorial allocation, unlawful per se, and not saved by the state action exemption after *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). Whether the Village's understanding of antitrust doctrine is correct, cf. *Fuchs v. Rural Electric Convenience Cooperative, Inc.*, 858 F.2d 1210 (7th Cir.1988), is not a subject of moment, because the district court held that even if enforcement of the consent decree violates the Sherman Act, the federal court is not authorized to enjoin the ongoing proceedings.

One may search the Sherman Act and the enforcement clauses of the antitrust laws—principally § 16 of the Clayton Act, 15 U.S.C. § 26—in vain for mention of injunctions against state proceedings. A tour through the debates leading to the antitrust laws will not reveal any discussion of the topic. The Supreme Court has not brought light out of this darkness. Three Justices concluded in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630-41, 97 S.Ct. 2881, 2887-93, 53 L.Ed.2d 1009 (1977) (Rehnquist, J., joined by Stewart & Powell, JJ.), that Congress should be taken literally. Section 2283 requires an "express" authorization; the antitrust laws do not mention injunctions against state proceedings: Q.E.D. Four other Justices concluded that § 16 of the Clayton Act authorizes injunctions against litigation in state court because it authorizes injunctive relief against all violations of the antitrust laws; litigation in state court may be such a violation: Q.E.D. 433 U.S. at 645-54, 97 S.Ct. at 2894-99 (Stevens, J., joined by Brennan, White & Marshall, JJ., dissenting). The remaining two Justices believed that § 16 allows injunctions against state proceedings when the antitrust laws may "be given [their] intended scope only by the stay of a state-court proceeding." 433 U.S. at 643, 97 S.Ct. at 2894 (Blackmun, J., joined by Burger, C.J.), quoting from *Mitchum v. Foster*, 407 U.S. 225, 238, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972). When would this be? Justice Blackmun explained:

I would hold that no injunction may issue against currently pending state-court proceedings unless those proceedings are themselves part of a "pattern of baseless, repetitive claims" that are being used as an anticompetitive device, all the traditional prerequisites for equitable relief are satisfied, and the only way to give the antitrust laws their intended scope is by staying the state proceedings.

433 U.S. at 644, 97 S.Ct. at 2894, quoting from *California Motor Transport Co. v.*

*Trucking Unlimited,* 404 U.S. 508, 513, 92 S.Ct. 609, 613, 30 L.Ed.2d 642 (1972).

Approaches such as that taken by Justice Blackmun, however attractive as a matter of first principles, have been criticized on the ground that they read "expressly" out of § 2283. E.g., Martin H. Redish, *The Anti–Injunction Statute Reconsidered,* 44 U.Chi.L.Rev. 717 (1977). Recently the Court has emphasized unanimously that § 2283 establishes a fundamental policy, the exceptions to which "are 'not [to] be enlarged by loose statutory construction.'" *Chick Kam Choo v. Exxon Corp.,* — U.S. ——, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988), quoting from *Atlantic Coast Line R.R. v. Locomotive Engineers,* 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). See also *Derrickson v. City of Danville,* 845 F.2d 715 (7th Cir.1988); *Hickey v. Duffy,* 827 F.2d 234, 240–43 (7th Cir.1987); *Dunn v. Carey,* 808 F.2d 555, 558–60 (7th Cir.1986). So perhaps the Court would be able to forge a majority opinion if it were to revisit the interaction of § 2283 and the antitrust laws. Our obligation as an inferior court is to apply the decision in *Vendo,* however, which means the least common denominator, the approach contained in Justice Blackmun's opinion. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....' *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15 [96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859] (1976) (opinion of Stewart, Powell, and Stevens, JJ.)." *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977).

■ The district court applied Justice Blackmun's approach and concluded that no injunction could issue, because Citizens has filed but a single suit. The Village nonetheless believes that it prevails under Justice Blackmun's approach. It treats the Justice's reference to multiple suits as a restatement of the elements of "sham litigation"—that is, litigation not entitled to the protection of the *Noerr–Pennington* doctrine. Since 1977 many courts, including this one, have recognized that a single suit may be a "sham", and therefore a substantive violation of the antitrust laws, when it is pursued in order to impose high costs of defending rather than in order to obtain relief. E.g., *MCI Communications Corp. v. AT & T,* 708 F.2d 1081, 1153–55 (7th Cir.1983); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1254–57 (9th Cir.1982). We held in *Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, Inc.,* 814 F.2d 358, 371–76 (7th Cir.1987), that the use of state courts to enforce a cartel is unlawful. Believing that the effort to enforce the consent decree is an attempt to implement a cartel agreement, the Village submits that no further evidence is needed: the one and only suit is a "sham" and therefore may be the basis of an injunction.

This is a colorable argument but misses Justice Blackmun's point. He inquired whether the failure to issue an injunction would prevent the effective enforcement of the antitrust laws. In other words, when does the need to raise antitrust defenses in state court itself impose high costs on rivalrous behavior, discourage competition, raise prices to consumers, and thereby violate the antitrust laws? If only one suit has been filed in state court, defending against that suit is no more costly than filing an independent action in federal court. In either case, if the merits of the antitrust argument are clear there will be swift vindication. When the adversary pursues multiple suits in multiple forums it may be disproportionately expensive to defend in state court. Otherwise, what's the difference? Perhaps if the state litigation were extraordinarily expensive and the state judge refused to entertain (or indefinitely postponed considering) an antitrust defense, the state suit could penalize competition and so be a source of antitrust concern. Such events must be rare, however, and the search for them may not be worth the candle. Waiting for multiple suits usually smokes out the antitrust offender's true goals and guards against

hasty federal intervention based on little more than speculation that the state courts will not do their jobs.

The need to defend against the state litigation could thwart the achievement of the objectives of the Sherman Act only when the process is the punishment. See *Grip–Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466 (7th Cir.1982). If there will be but a single suit, and an antitrust dispute between the parties will be resolved by *some* court, resolution of the merits by the state court does not threaten the achievement of federal objectives. The state suit may be regrettable, may even be "sham litigation", but the defense in state court will do as well in vindicating the federal rule as opening a second front in federal court. This was so in *Vendo*, which entailed a single dispute that had to be resolved in one system of courts or another, and Justice Blackmun concluded that § 2283 therefore blocked an injunction against the state's proceedings. It is so here, too. There is only one suit in state court. Citizens applied to the court with jurisdiction of the consent decree. The Village could have interposed an antitrust defense to enforcement of the decree; the dispute then would have been resolved once and for all. If the pursuit of the claim created antitrust injury, then the Village could have asked for damages from the state court or filed a federal suit under the approach of *Premier*, 814 F.2d at 372–76, if the state court deemed that remedy beyond its power. In either case, the aims of the antitrust laws may be secured without a federal injunction against the state case. When the opportunity to present the federal defense to state court, coupled with the opportunity to receive damages, carries out all federal policies, then § 2283 forbids injunctive remedies.

■ The Village would face a further hurdle even if we were to agree with its recharacterization of Justice Blackmun's approach. The Village concedes that it is not entitled to an injunction unless the state suit is "sham litigation" within the meaning of *California Motor Transport, Premier,* and *Grip–Pak.* Nothing in the record suggests that Citizens filed the state suit because it would be costly for the Village to defend. Citizens not only wanted to win but also has won. The state court has rendered a judgment almost entirely in Citizens' favor.* The Village denies that its loss is significant, informing us that it did not present an antitrust defense. Because federal courts have exclusive jurisdiction of cases under the Sherman Act, see *General Investment Co. v. Lake Shore Ry.*, 260 U.S. 261, 286–88, 43 S.Ct. 106, 116–17, 67 L.Ed. 244 (1922), the Village believes that it has an absolute entitlement to a federal adjudication of its antitrust contentions. Thus, it submits, it was entitled to withhold the antitrust defense from the state court, call the suit a "sham", and obtain federal relief even though it has lost on the merits.

■ Not so. Federal courts may have exclusive jurisdiction of claims under the Sherman Act, but state courts are competent to adjudicate antitrust defenses. See, e.g., *Vendo*, 433 U.S. at 636 n. 6, 97 S.Ct. at 2889–90 n. 6 (plurality opinion); *Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184, 187 (2d Cir.1955) (L. Hand, J.); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1198 (7th Cir. 1987) (dictum). Arbitrators, too, resolve antitrust disputes. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). One may doubt whether in light of *Mitsubishi* antitrust is still an exclusive province of the federal courts. *General Investment* declared it so because § 16 of the Clayton Act grants jurisdiction to the "courts of the United States", but later cases dealing with other statutes have declined to infer from the *grant* of jurisdiction to the federal courts a *prohibition* of

---

* Citizens believes that its victory at trial in state court renders the Village's request for a preliminary injunction moot. It does not. The district court could enjoin the ongoing state proceedings (now on appeal) and block execution of the judgment. The injunction in *Vendo* forbade implementation of a final judgment rendered by the state court. The dispute between the parties is live, even with respect to the request for preliminary injunctive relief.

jurisdiction in state courts. *Martinez v. California,* 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980); *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). The inferior federal courts have only such jurisdiction as Congress creates, while state courts often exercise general jurisdiction and may not discriminate against federal claims. *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). Thus a grant of jurisdiction to federal courts of the kind found in § 16 hardly implies that state courts lack jurisdiction. If linguistic support for exclusive jurisdiction is missing, no functional argument is available in its stead. "[I]t is hard to understand why state courts should be thought less competent to enforce the federal antitrust laws than the federal civil rights laws—which they have jurisdiction concurrently with the federal courts to enforce—particularly when they can adjudicate federal antitrust defenses with preclusive effect". *Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1153 (7th Cir. 1984) (en banc) (dictum) (citation omitted), reversed in part on other grounds, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). *General Investment* may be ripe for reexamination. No matter its fate, however, to the extent antitrust law may be interposed as a defense in state court the Village may not demand a federal adjudication. There is no general right to have federal-law defenses to state-law claims resolved by federal courts. "If the state's tribunal is competent to resolve the federal defense, then the litigation must continue in that forum." *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 529 (7th Cir.1988).

■ Citizens contends that the Village's decision to withhold the antitrust arguments from the state court precludes further litigation in the federal court. Under 28 U.S.C. § 1738 the federal court must give this neglect the same effect a state court would. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Cf. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Section 1738 governs even though the omitted issue is one of antitrust law, *Marrese* holds. The district judge warned counsel for the Village that

> a litigant is foreclosed as to matters that could have been litigated, just as well as those actually litigated.... [If] the Village resolutely refuses to pose the question to the state court by way of defense, it faces the kinds of risks that I have identified.... I caution the Village that it proceeds at own risk [sic] if it doesn't tender the antitrust defense in the state court hearing.

The parties have not briefed in this court the question under § 1738: whether Illinois law precludes the Village from filing a fresh antitrust suit, having omitted to make an antitrust defense in the pending suit. The district court must decide the point in the first instance if the Village presses its demands for damages or prospective relief. For now what matters is that Citizens' victory in the state case, coupled with the absence of any claim that Citizens filed its suit to drain the Village's coffers rather than to enforce the consent decree, makes it impossible to characterize the suit as a sham.

So we affirm the judgment for two reasons, each sufficient. Even if the suit pending in state court were "sham litigation", § 2283 would prevent an injunction under Justice Blackmun's views because the state court may entertain the antitrust defense without jeopardizing the achievement of federal objectives; but the suit is not "sham litigation" within the meaning of *California Motor Transport* anyway. Neither preliminary nor permanent injunctive relief is available against the case now pending. The district court must decide whether the Village is entitled to damages or relief against future litigation, to which § 2283 does not apply.

AFFIRMED.